**UNITED STATES of America**

v.

**Anthony J. VESICH, Jr.**

**Crim. No. 82–452.**

United States District Court, E.D. Louisiana.

March 7, 1983.

Ronald A. Fonseca, Lance M. Africk, U.S. Attorney's Office, New Orleans, La., for the U.S.

Daniel J. Markcy, Jr., and Patrick Hand, Hand & Markey, New Orleans, La., for defendant Anthony J. Vesich, Jr.

### ORDER

CHARLES SCHWARTZ, Jr., District Judge.

This matter came before the Court on the motion of defendant for judgment of acquittal as to Counts 1 and 2 of the Indictment.[1] Following oral argument, and considering the record in the matter and the applicable law, for the reasons hereinafter set out, defendant's motion was DENIED.

With respect to Count 1 of the Indictment, defendant has urged several grounds

requiring a judgment of acquittal: (1) that given its normal, usual and literal meaning, the language of defendant cited in the indictment as "advising," "urging" and "persuading" Robert R. Fragale to testify falsely is not an instruction or advice to lie; (2) that at no time pertinent thereto was Robert R. Fragale a witness before the Federal Grand Jury, it not being even alleged in the indictment that Fragale was a witness or that he had been subpoenaed as a witness before any Federal Tribunal; (3) that there was no pending judicial proceeding at the time of the alleged "obstruction" which would qualify as "administration of justice" within the meaning of § 1503; and (4) that even if there was a pending judicial proceeding which qualifies as "administration of justice" within the meaning of § 1503, the government has not proved that defendant was aware of any such proceeding.

The first ground can be disposed of summarily, in that the language set forth in the indictment, and the evidence presented by the government, is certainly sufficient to reasonably support a jury verdict that the defendant "advised, urged, and attempted to persuade Robert R. Fragale to testify falsely," as alleged in the indictment.

With regard to grounds (2) and (3), some confusion may be engendered by the fact that § 1503 contains both a specific provision—the first clause of § 1503—prohibiting any corrupt endeavor to influence, intimidate, or impede a witness, and a more general provision—the last clause of § 1503—prohibiting any corrupt endeavor to influence, obstruct, or impede the due administration of justice. A prosecution for corruptly endeavoring to influence an individual to give false testimony to a grand jury may, however, be brought under the more specific first clause of § 1503 or the broader "due administration" clause for "that clause 'is broad enough to cover any act, committed corruptly, in an endeavor to impede or

1. Prior to trial, defendant filed two motions to dismiss the indictment, which were denied with the right to re-urge at the close of the government's case. Defendant did not re-urge said motions, but specifically incorporated the arguments made therein in this motion for judgment of acquittal.

obstruct the due administration of justice.'" *United States v. Partin,* 552 F.2d 621, 631 (5th Cir.), *cert. denied* 434 U.S. 903, 54 L.Ed.2d 189 (1977), *citing Samples v. United States,* 121 F.2d 263, 266 (5th Cir.), *cert. denied* 314 U.S. 662, 62 S.Ct. 129, 86 L.Ed. 530 (1941). This prosecution is clearly brought under the broader "due administration" clause of § 1503, as evidenced by the language of the indictment charging that the defendant "corruptly did endeavor to influence, obstruct and impede the due administration of justice ... knowing that Robert R. Fragale was a prospective witness to appear before the United States Grand Jury for the Eastern District of Louisiana...."

■ With regard to ground (2) specifically, now, an examination of the Fifth Circuit law on the question readily reveals that to sustain a conviction under § 1503, it is not necessary that at the time of the "obstruction" the individual corruptly influenced actually be a witness or be subpoenaed as a witness before a Federal Tribunal. As stated in *United States v. Chandler,* 604 F.2d 972, 974 (5th Cir.1979), *cert. dismissed,* 444 U.S. 1104, 100 S.Ct. 1074, 63 L.Ed.2d 317 (1980):

> This court has defined a section 1503 witness as one who 'knows or is supposed to know material facts, and is expected to testify to them, or to be called on to testify....' *Hunt v. United States,* 400 F.2d 306, 307 (5th Cir.1978), *cert. denied,* 393 U.S. 1021 [89 S.Ct. 629, 21 L.Ed.2d 566 (1969)]...; *Odom v. United States,* 116 F.2d 996, 998 (5th Cir.), *rev'd on other grounds,* 313 U.S. 544 [61 S.Ct. 957, 85 L.Ed. 1511] (1941).... Indeed, the statute's very purposes of protecting participants in federal judicial proceedings and preventing interference by corrupt methods with the administration of justice, *Samples v. United States,* 121 F.2d 263, 265 (5th Cir.1941) (construing 18 U.S.C. § 241, a precursor of 18 U.S.C. § 1503), require that the connotation of 'witness' be 'determined with a view to substance, rather than form' ....

Thus, we have held that a person 'may be a witness within the protection of this statute though he may not be under formal subpoena.' *Odom v. United States, supra* (construing 18 U.S.C. §§ 241 and 242, now 18 U.S.C. § 1503). And we have ruled that an informer who had given information to the government, resulting in the filing of a complaint with a United States Commissioner, and who was expected to testify in future legal proceedings that had not yet been convened when the effort to impede him in the exercise of his duty to testify occurred, was a witness protected by 18 U.S.C. § 1503. *Hunt v. United States, supra.*

■ In this case, the Government has established that at the time of the alleged "obstruction of justice" by Vesich, Fragale was expected to testify to material facts in future legal proceedings. Specifically, the Government has shown that Fragale was cooperating with the Government and knew he would be called as a witness before a Grand Jury to testify about his narcotic sources. In addition to being specifically advised of this fact by First Assistant United States Attorney Albert Winters in November and December, 1981, Fragale had agreed to testify pursuant to the November 12, 1981 agreement between Fragale and the United States of America, which provided in pertinent part:

> Mr. Fragale is presently charged in Federal Court with violation of Immigration Laws and in State Court with violations of the Narcotic Laws. The defendant agrees to be interviewed by Federal and State Law Enforcement Officers and be totally debriefed as to his knowledge of any violations of criminal law. The defendant agrees to appear before any Grand Jury or any Trial, if called, as a witness and to testify completely and truthfully.

Furthermore, the Government has shown that at the time of the alleged obstruction of justice by Vesich, it intended to bring Fragale before the December, 1981 Grand Jury in the Eastern District of Louisiana to testify about his narcotic sources, but had

not issued a subpoena for his appearance because Fragale was a cooperating individual and it was the policy of the local United States Attorney's Office not to issue subpoenas to such individuals to, among other reasons, prevent the possible unintentional disclosure that a person is cooperating with the Government. Indeed, Fragale had already made undercover contacts in two separate cases before his January 6, 1982 meeting with Vesich.

Ultimately, because of the length of time involved in his undercover operations, Fragale did not testify before the December, 1981 Grand Jury, and did not testify as to his narcotic trafficking activity until October 21, 1982, before the August, 1982 Grand Jury, but the fact remains that Fragale was expected to testify before the Grand Jury at the time of the alleged obstruction of justice by Vesich.

Therefore, the failure of the government to allege or prove that Fragale was a witness or had been subpoenaed as a witness before a federal grand jury at the time of the alleged obstruction, does not support a judgment of acquittal.

 With regard to defendant's ground (3), defendant correctly states that a prerequisite for conviction under § 1503 is that defendant's actions be related to a pending judicial proceeding. *See, e.g., United States v. Howard,* 569 F.2d 1331, 1333, n. 2, and 1336, n. 9 (5th Cir.), *cert. denied* 439 U.S. 834, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978); *United States v. Koehler,* 544 F.2d 1326, 1328, n. 3 (5th Cir.1977).

This requirement of a pending judicial proceeding applies equally to prosecutions under the specific, first clause of § 1503 and under the broader, "due administration" clause. *See, e.g., United States v. Howard, supra.* Under the first clause of § 1503, this requirement comes into play as a necessary element of the proof that the individual corruptly influenced was a "wit-

ness" for purposes of § 1503. *See United States v. Chandler, supra,* and the cases cited therein. Under the last clause of § 1503, the requirement of a pending judicial proceeding comes into play as a necessary element of the proof that the "due administration of justice" was obstructed. *See, e.g. United States v. Howard, supra.*

 There are no Fifth Circuit cases specifically reciting the standard to be applied in determining whether a pending judicial proceeding exists for the purposes of the "due administration" clause of § 1503. However, the logic of the opinions cited dictates that the standards used for purposes of the "due administration" and "witness" clauses of § 1503 be the same. Therefore, this Court relies herein on the Fifth Circuit standard under the "witness" clause of § 1503, for determining whether there is a pending judicial proceeding for the purposes of the "due administration" clause of § 1503.

Therefore, for the reasons stated in connection with defendant's ground (2) *supra,* the Court finds that the evidence presented by the government is sufficient to reasonably support a jury verdict that there was a pending judicial proceeding at the time of defendant's alleged obstruction of justice.[2]

 With regard to defendant's ground (4), defendant is correct in arguing that the government must prove that he, the defendant, expected the witness to testify at a pending judicial proceeding.[3] However, the Court rejects defendant's motion for a judgment of acquittal on this ground because the Court finds that the jury could reasonably infer from the tapes and the testimony of Winters, Fragale, and Vesich that, at the time of the alleged obstruction, Vesich expected Fragale to testify at a pending grand jury proceeding.

In connection with ground (4), defendant has raised the further point that the government has failed to prove, or allege,

---

**2.** In the jury instructions delivered in this case, the jury will be specifically instructed that the "due administration of justice" portion of § 1503 requires a finding that there was a pending judicial proceeding at the time of the alleged statutory violation.

**3.** The jury instructions will reflect this requirement.

that defendant was aware of a particular grand jury proceeding before which Fragale was expected to testify.

Even if true, this does not require a judgment of acquittal, as there is no authority for the proposition that the government must prove the *particular* proceeding. Rather, as stated above, the requirement is that the government prove Vesich expected Fragale to testify in a *pending* judicial proceeding.[4]

In a similar vein, defendant argued prior to trial in his motions to dismiss and for a bill of particulars that the indictment is invalid, on its face, because reference is made only to a nebulous "grand jury investigation," and the failure of the indictment to specify the exact proceeding to which it refers (a) renders the indictment open-ended enough to allow the government to present evidence proving an alleged offense other than that charged by the grand jury; and (b) prevents the defendant from establishing that he had no knowledge of the pendency of the grand jury proceeding.

The Court refused to grant a bill of particulars or to dismiss the indictment on these grounds, because (1) the government is not required to prove that Vesich was aware of a particular grand jury proceeding before which Fragale was expected to testify; and (2) the specification in the indictment of the time and manner of defendant's alleged endeavor to influence Fragale sufficiently puts defendant on notice of the offense charged and protects him from future prosecutions for the same acts.

The essentials of a valid indictment are that it be a 'plain, concise, and definite written statement of the essential facts constituting the offense charged.' Fed.R. Crim.P. 7(c). In this case, absent a specification of which grand jury was obstructed by defendant's actions, the indictment is

still sufficient to enable the defendant to know what he is charged with, to prepare his defense, and to plead jeopardy in the event of a subsequent conviction for the same offense, thus meeting all the constitutional requirements. *Hunt, supra,* at 308; *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974).

With regard to Count 2 of the Indictment, defendant has moved for a judgment of acquittal on two grounds: (1) that the defendant was brought before the grand jury solely for the sake of inducing perjury, and that therefore, the conduct of the government was abusive of the grand jury function; and (2) that the alleged false testimony by defendant was not material, and hence is insufficient, to permit a conviction for perjury.[5] Specifically, defendant argues that the grand jury had no call for subpoenaing him for testimony except to induce perjury, because the matters upon which they called him for were already in their possession through the tape recorded conversation. Defendant further argues that the government could not have subpoenaed him for the purpose of *explaining* the tape recorded conversation, since the Government never played the recording, quoted the conversation, or even identified Fragale for defendant in order to refresh defendant's recollection and allow him to proffer an explanation to the Grand Jury.

The Eighth Circuit, in a case that is on all fours with the current case, rejected these claims and let stand a conviction for perjury in *United States v. Phillips,* 540 F.2d 319 (8th Cir.), *cert. denied* 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976). The defendant in *Phillips,* an attorney and Oklahoma state senator, made statements to Charles Davis, the owner of a major development called the Shangri La Lodge, to the effect that he, Phillips, could arrange any-

---

**4.** The jury instructions will reflect this distinction.

**5.** Defendant has also moved that if the Court holds that the discussion between defendant and Fragale did not amount to an advice to lie, then Count 2 has no efficacy whatsoever and should be dismissed. Since the Court has held,

per its discussion of defendant's ground (1) *supra,* that the discussion cited in the indictment and offered in evidence by the government is sufficient to support a jury verdict as an advice to lie, this ground for dismissal is without force.

thing that Davis needed in the way of local protection from prosecution for gambling or prostitution by the district attorney. Davis passed the information along to Frank Grayson, an Oklahoma district attorney who in turn testified about this before the Federal Grand Jury.

The Grand Jury was investigating a conspiracy to establish illegal gambling and prostitution in Oklahoma nightclubs by offering bribes to local government officials in return for protection from the law. Davis provided them with a tape that he had recorded by a detective agency of a conversation between himself and Phillips during which Phillips told Davis that illegal liquor and gambling operations could be run at the Shangri La on a limited basis. Specifically, Phillips stated, "I can control Frank[,]" in obvious reference to district attorney Grayson. The Grand Jury summoned Phillips to testify where he repeatedly denied ever making such a statement to anyone and specifically to any person associated with the Shangri La.

Defendant Phillips made the same claim that defendant Vesich makes now: that his questioning could not be material because the prosecution and the Grand Jury had access to the tape and its contents before he was called to testify. The Eighth Circuit rejected this stating that:

> The latitude of materiality with respect to questions asked of a witness during a grand jury investigation is quite broad. *United States v. Calandra*, 414 U.S. 338, 343–344 [94 S.Ct. 613, 617, 38 L.Ed.2d 561] (1974); *United States v. Paolicelli*, 505 F.2d 971, 973 (5th Cir.1974); *United States v. Stone*, 429 F.2d 138, 140 (2nd Cir.1970). As stated in the *Stone* case:
> "... [M]ateriality of statements made in a grand jury investigation may more readily appear than that of similar evidence offered on an issue in civil or criminal litigation, since the purpose of the investigation is to get at facts which will enable the grand jury to determine whether formal charges should be made against someone rather than prove matters directly at is-

sue.... Leads to further inquiry may be of material worth to an investigation."
> *Id.* at 140; *see also United States v. Paolicelli, supra,* 505 F.2d at 973; *United States v. Lardieri,* 497 F.2d 317, 319 (3d Cir.1974). A grand jury investigation is not carried out until every available clue has been run down and all witnesses have been properly examined to discover whether a crime has been committed. *United States v. Calandra, supra,* 414 U.S. at 344 [94 S.Ct. at 618].

540 F.2d at 328–329. *Accord, United States v. Carson,* 464 F.2d 424, 436 (2nd Cir.), *cert. denied* 409 U.S. 949, 93 S.Ct. 268, 34 L.Ed.2d 219 (1972); *United States v. Nickels,* 502 F.2d 1173, 1176 (7th Cir.), *cert. denied* 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976).

Similarly, in this case, the Grand Jury prior to proceeding to indict the defendant for obstruction of justice, and in its investigation of such charge itself, had the right to explore every avenue in connection therewith, including whether or not Vesich would admit it. Further, in such investigation, the Grand Jury had the right to observe the witness's spontaneous response to such questioning, particularly after the Assistant United States Attorney (a) advised the defendant of his rights (Tr. p. 6), (b) emphasized the defendant's fifth amendment rights (Tr. p. 6), (c) made sure he understood that he was subject to the laws of perjury (Tr. pp. 7–8 and p. 25), (d) asked him if he had an attorney with him (Tr. p. 7), and (e) asked him if he wished to talk his rights over with his attorney (Tr. p. 8).

Indeed, five days prior to the time of his grand jury appearance, defendant was advised, through his attorney, by Assistant United States Attorney Albert Winters that he, Vesich, was the subject of a grand jury investigation and, in fact, that voice exemplars would be requested of him in the near future.

On top of these precautions, when the defendant was again asked whether he had advised a witness not to reveal his narcotics source to the grand jury, he was, at his

request, permitted to immediately leave and confer with his attorney (Tr. p. 21). Upon his return, he claimed he could not recall any such instance. After further clues from the tape failed to stir his memory, he was reminded that such answers could still be the basis of a perjury conviction.

In view of Vesich's responses to the questions propounded after discussing the matter with his attorney, it was not unreasonable for the Grand Jury to conclude, in light of the information on the tapes, that further interrogation of Vesich on the matter—such as by playing the tapes in his presence—would be of no value.

Moreover, the Grand Jury transcript shows that in addition to questioning Vesich about his alleged obstruction of justice, the Grand Jury also questioned him about a possible obstruction of justice committed by a Mr. John Miorana. This area of questioning was prompted by the implication on one of the tapes of the conversations between Fragale and Vesich that Miorana may have lied to a grand jury. Therefore, it can hardly be argued that the sole purpose of having the defendant before the Grand Jury was to induce perjury.

The cases cited by the defendant in support of his motion to dismiss are either not applicable or are distinguishable. *Bursey v. United States,* 466 F.2d 1059 (9th Cir.1972), was a case that dealt with notions of first and fifth amendment rights and due process; it did not even discuss inducement of perjury. As to repetitious questioning, this case was speaking about being called for testimony on different occasions and being asked the same questions without being refreshed as to one's previous answers. In the case at bar all questions propounded to the defendant were done at one time; there were no previous answers with which to refresh his memory.

Defendant also relies on the proposition forwarded by *Brown v. United States,* 245 F.2d 549 (8th Cir.1957), and by the companion cases cited along with it, that calling an individual to testify in a grand jury investigation whose main object was to obtain a perjury indictment is improper. While this principle may be correct, it is inapplicable to this case because as discussed previously, the defendant was not summoned with an eye solely to obtain a perjury indictment— the grand jury *was* investigating substantive charges with which Vesich was implicated.

▮ Finally, defendant has raised the argument that the alleged false testimony by defendant was not material, and hence is insufficient to permit a conviction for perjury. Under the law of the Fifth Circuit, the test of whether testimony before a grand jury is material, and hence sufficient to sustain a conviction for perjury:

> is whether the false testimony was capable of influencing the tribunal on the issue ... [citation omitted] or whether the false testimony would have the natural effect or tendency to influence, impede, or dissuade the Grand Jury from pursuing its investigation.... [citation omitted]. The false statements need not actually impede the investigation [citation omitted].

*United States v. Gremillion,* 464 F.2d 901, 905 (5th Cir.), *cert. denied,* 409 U.S. 1085, 93 S.Ct. 683, 34 L.Ed.2d 672 (1972). *See also, United States v. Berardi,* 629 F.2d 723, 728 (2nd Cir.), *cert. denied* 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980) wherein the court states:

> "Materiality is ... demonstrated if the question posed is such that a truthful answer could help the inquiry, or a false response hinder it, and these effects are weighed in terms of potentiality rather than probability. Thus, in applying this gauge to specific situations, it is only the question, at the time of its asking, which is considered. It is of no consequence that the information sought would be merely cumulative, [or] that the response was believed by the grand jury to be perjurious at the time it was uttered....

▮ Here, the defendant's denial before the Grand Jury had the natural effect or tendency to impede or influence the Grand Jury from its investigation and thus was material—even though it did not actually impede the investigation.

Therefore, for the reasons set out, defendant's motion with regard to Count 2 of the Indictment is denied.

Accordingly, defendant's motion for judgment of acquittal is hereby DENIED.

*See* Appendix A for a recitation of the factual background of this case.

## APPENDIX A

Defendant Anthony J. Vesich, Jr., an attorney and a Commissioner of the Orleans Parish Civil District Court, is charged in a two-count indictment with (1) obstruction of justice in violation of 18 U.S.C. § 1503; and (2) false declarations before a grand jury in violation of 18 U.S.C. § 1623.

The obstruction of justice count is based on a conversation between defendant and Robert R. Fragale on January 6, 1982, in which defendant allegedly "advised, urged and attempted to persuade" Fragale to testify falsely before the United States Grand Jury for the Eastern District of Louisiana. Defendant is charged under § 1503 as having "corruptly endeavored to influence, obstruct and impede the due administration of justice," in that he advised Fragale to lie, knowing that Fragale was a prospective witness before the Grand Jury.

Aside from the testimony of Fragale, the chief evidence against the defendant is a tape recording of the January 6, 1982 conversation made by Fragale in cooperation with the United States Attorney's Office for the Eastern District of Louisiana. An excerpt from that tape recording of defendant's alleged advice to lie is incorporated in the indictment as follows:

"That's why I told you to get a story straight for them when you do go. Yeah, my connection (meaning source of narcotics) was Joe Blow, Peter Phernerk (phonetic), and all that and they'd be gone. Now they can't do you nothing for that Bob ... How can they prove you're lying? If they say, Bob, who was your connection? Say my connection, my connection was Jim Bowie, he's dead. Peter, so and so, he fled the country. That's my connections. No they can't, how they're going to prove that? They ain't going to believe you. They ain't going to like what you tell them and they're going to go back and tell the judge you haven't cooperated, as some part of your sentence, but they ain't going to believe you, but they can't do you a f___king thing, Bob;"

According to the testimony of First Assistant United States Attorney Albert Winters, and others, Fragale had been cooperating with the Government since November of 1981 in its investigation of narcotics trafficking, Fragale having been released on personal recognizance bond pending resolution of certain narcotics charges. The defendant had represented Fragale in the past on drug-related charges, and Fragale approached him in January of 1982 with apprehension about having to go before the grand jury and testify about his narcotics sources. After a couple of telephone conversations and a lunch meeting, monitored by agents of the Federal Bureau of Investigation, Fragale met with defendant in his law office on January 6, 1982, and the alleged obstruction of justice occurred.

The false declarations count against defendant is based on his appearance on October 21, 1982, before the duly empaneled and sworn August 1982 Grand Jury for the Eastern District of Louisiana. As reproduced from the grand jury transcript, the indictment alleges that while testifying as a witness under oath, the defendant was asked, "Have you ever advised any person that that person, he or she, should lie before a Federal Grand Jury if you felt that the government could not prove perjury?" In response, the defendant answered "No," and subsequently nodded his head affirmatively when asked, "Your answer is, no?" Aside from the grand jury transcript, the Government relies on the testimony of Winters, and others present in the grand jury proceeding, to prove that such statements were made under oath before a duly constituted grand jury proceeding, and that such statements were material to the investigation being conducted by the grand jury.