UNITED STATES of America,
Appellee,

v.

Samuel STONE, Appellant.

No. 799, Docket 34651.

United States Court of Appeals,
Second Circuit.

Argued May 20, 1970.

Decided July 7, 1970.

James J. Cally, New York City, for appellant.

Richard A. Givens, Asst. U. S. Atty., (Whitney North Seymour, Jr., U. S. Atty., for the Southern District of New York, John H. Doyle, III, New York City, of counsel), for appellee.

Before SMITH and HAYS, Circuit Judges, and BARTELS, District Judge.*

J. JOSEPH SMITH, Circuit Judge:

Samuel Stone, an attorney, was convicted of perjury in violation of 18 U.S. C. § 1621 in the United States District Court for the Southern District of New York, Harold R. Tyler, Jr., Judge, on trial to the court, jury waived, and appeals. Appellant was charged with two counts of perjury in grand jury testimony on February 19, 1969 (count one) and on March 10, 1969 (count two); he was acquitted by the court on the first count and found guilty on the second count. The only question raised in this appeal is appellant's claim that his false testimony before the grand jury on March 10, 1969 was not material to the grand jury's inquiry. The court found the false testimony was material to several legitimate objects of the grand jury's investigation; we find no error and affirm.

In the fall of 1968 a federal grand jury for the Southern District of New York was investigating alleged obstruction of interstate commerce by the use of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951; Stone was served with a subpoena on November 7, returnable on November 12, 1968, directing him to appear before the grand jury. The Nash Moving and Storage Company, owned by Jerome Rosenberg and another, had had difficulties in 1967 with the Teamsters Union, and in order to induce the Teamsters to allow his company to resume moving operations, Rosenberg paid $1500 to Stone, whom Rosenberg did not then know and who had performed no legal services for him. Stone met Rosenberg on the street November 11, 1968, inquired as to what Rosenberg had told the grand jury and assured Rosenberg that the grand jury was just fishing and looking to create problems and trouble. Stone appeared before the grand jury on at least four occasions: November 14, 1968, November 19, 1968, February 19, 1969 and March 10, 1969, and the inquiry at the initial sessions was in regard to the $1500 he had received from Rosenberg. Stone claimed the money was payment for legal services for his negotiation of a contract, a copy of which he was unable at the time to produce; his explanations to the grand jury warranted a further inquiry into the possibility that he had been used as a conduit for an illegal payment to Teamsters officials in violation of 29 U.S.C. § 186. Stone was unable to find the original bill for his services and testified to the grand jury that at Rosenberg's request, he supplied Rosenberg with a "copy" of the bill just a month previous to Stone's appearance before the grand jury. By the time of the February 19 and March 10, 1969 sessions, the investigation had spread to include possible bribes to union officials, extortion in interstate commerce and obstruction of justice such as obfuscation of the grand jury investigation by any persons who had been called or were about to be called as witnesses before the grand jury. Before he testified at the March 10 session, Stone was informed of this expanded inquiry; in both the February 19 and March 10 sessions, however, Stone denied having met Rosenberg after he (Stone) had been notified to appear before the grand jury. When asked at the March 10, 1969 session if he wanted to amend any of his testimony given at the February 19 session, Stone specifically denied any meeting with Rosenberg subsequent to being subpoenaed.

Stone's denials of any meeting with Rosenberg between November 7, 1968 and when Stone first appeared before the grand jury were the basis for the two counts of the indictment. The trial

* United States District Judge for the Eastern District of New York, sitting by designation.

court found that appellant may have merely forgotten the November meeting when asked at the February 19, 1969 grand jury session, at which Stone's answers were somewhat vague, that reasonable doubt of willful falsehood existed, and acquitted Stone on the first count. However, Stone was found to have been on notice that there would be further questions at the next session at which he was to appear; Stone's positive denials at the March 10, 1969 session were found to be demonstrably and willfully untrue or false.

 The essential elements of a violation of 18 U.S.C. § 1621 are the taking of an oath, in a case where a law of the United States authorizes the oath to be administered, to testify truly, and willfully and contrary to such oath making a false statement, as to a material fact and which the defendant did not believe to be true. See, e. g., United States ex rel. De La Fuente v. Swing, 146 F. Supp. 648 (S.D.Tex.1956), aff'd 239 F.2d 759 (5 Cir. 1956). Whether a meeting and conversation took place or not, was the salient fact about which the government contended Stone perjured himself. The government presented two witnesses to testify that there was a meeting between Stone and Rosenberg on November 11, 1968 around 4 p. m., thereby proving that Stone's denials to the grand jury of such a meeting were false. The question is whether this false testimony, i. e., that there was no meeting between Stone and Rosenberg after Stone had been subpoenaed to appear before the grand jury and before Stone did first appear, was false testimony as to a material fact. The government must prove the materiality of the false testimony. Brooks v. United States, 253 F.2d 362 (5 Cir. 1958), cert. denied, 357 U.S. 927, 78 S. Ct. 1374, 2 L.Ed.2d 1372; Segal v. United States, 246 F.2d 814, 818 (8 Cir. 1969), cert denied, 355 U.S. 894, 78 S.Ct. 269, 2 L.Ed.2d 192; and the issue of materiality is one of law. United States v. Alu, 246 F.2d 29 (2d Cir. 1957), Brooks v. United States, *supra*. However, materiality of statements made in a grand jury investigation may more readily appear than that of similar evidence offered on an issue in civil or criminal litigation, since the purpose of the investigation is to get at facts which will enable the grand jury to determine whether formal charges should be made against someone rather than prove matters directly at issue. United States v. Alu, *supra*. Leads to further inquiry may be of material worth to an investigation. Thus the test of materiality is whether the false testimony has the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation. Carroll v. United States, 16 F.2d 951 (2d Cir. 1927), cert. denied, 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880 (1927); United States v. Collins, 272 F.2d 650 (2d Cir. 1959), cert. denied, 362 U.S. 911, 80 S.Ct. 681, 4 L.Ed.2d 619 (1960); United States v. Marchisio, 344 F.2d 653 (2d Cir. 1965); United States v. McFarland, 371 F.2d 701 (2d Cir. 1966), cert. denied, 387 U.S. 906, 87 S.Ct. 1689, 18 L.Ed.2d 624 (1967); see United States v. Moran, 194 F.2d 623 (2d Cir. 1952), cert. denied, 343 U. S. 965, 72 S.Ct. 1058, 96 L.Ed. 1362 (1952).

 A grand jury's investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed; its investigation proceeds step-by-step and a false statement by a witness, such as Stone, in any step, even though not relevant in an essential sense to the ultimate issues pending before the grand jury, may be material in that it tends to influence or impede the course of the investigation. Carroll v. United States, *supra*; United States v. Collins, *supra*; see United States v. Alu, *supra*. Materiality must only be established as of the time the witness' answers were given since materiality refers merely to the relationship between the interrogation and

the grand jury's objective at the time. United States v. McFarland, *supra.* In this case, when Stone appeared on March 10, 1969 and falsely testified that he had not met with Rosenberg after he (Stone) had been subpoenaed on November 7, 1968, the grand jury's investigation had broadened to inquiries concerning possible violations of the Hobbs Act (e. g. 18 U.S.C. § 1951), improper management-labor payments such as the $1500 paid to Stone, and the possibility of obstruction of the inquiry itself. Although Stone did testify at that session that he had talked to Rosenberg on the telephone after receiving the subpoena, that conversation was purportedly only a general inquiry by Stone as to what was happening, i.e., why Stone had been subpoenaed. By denying a meeting with Rosenberg, Stone was minimizing his post-investigation contacts with Rosenberg and withholding testimony which may have caused the grand jury to inquire as to the purpose of such a meeting, what transpired and whether there were others like it. Such an inquiry would be proper and particularly relevant to the inquiries concerning obstruction of the investigation and improper management-labor payments. By denying the meeting with Rosenberg, no matter whether what transpired therein was later proven to be illegal or not, Stone's false testimony to the grand jury on March 10, 1969, reaffirming his prior denials, had the tendency to impede, influence and dissuade the grand jury from further investigating the possibility of improper management-labor payments by Rosenberg and possible attempts by Stone by his remarks to Rosenberg in the conversation to obstruct the investigation. The grand jury might well have taken Stone's remarks to Rosenberg as an effort to encourage Rosenberg to continue his stated course up to that time of telling the grand jury nothing about the payment made. This false testimony was material to the grand jury investigation and was properly held to constitute perjury.

Affirmed.