**In re GRAND JURY SUBPOENA DUCES TECUM SERVED UPON Dr. Jenaro COLLAZO COLLAZO.**

Misc. No. 81–0044.

United States District Court, D. Puerto Rico.

Dec. 9, 1981.

---

6. For a full discussion see Woods, comparative Fault—Appendix p. 427, *et seq.*

Raymond Acosta, U.S. Atty. for Puerto Rico, San Juan, P.R. by Gary Michael Black, Atty., U.S. Dept. of Justice, Washington, D.C., for the U.S.

Hector Reichard de Cardona, Atty. Gen., Commonwealth of P.R., by Eduardo L. Busó and Robert E. Montalvo, Attys., Federal Litigation Div., Dept. of Justice, San Juan, P.R., for Dr. Jenaro Collazo Collazo.

## MEMORANDUM OPINION AND ORDER

CEREZO, District Judge.

The issue in this case is whether a prior determination of reasonable suspicion that a crime has been committed in violation of the Food Stamp Act must be made by a court before a grand jury can investigate and subpoena case files of beneficiaries of the program.

The Secretary of Social Services of the Commonwealth of Puerto Rico has filed a motion to quash a grand jury subpoena ordering him to testify before the grand jury and to produce records concerning a certain beneficiary of the Food Stamp Program. The sole ground urged in the motion to quash the subpoena is the regulation pertaining to disclosure by participating state agencies in the Program, 7 CFR Part 272.1(c)(1), which states:

Use or disclosure of information obtained from food stamp applicant households, exclusively for the Food Stamp Program, shall be restricted to persons directly connected with the administration or enforcement of the provisions of the Food Stamp Act or regulations, or the Food Distribution Programs as defined in Part 283 of this Subchapter, or with other Federal or federally aided, means-tested assistance programs wuch as Title IV–A (AFDC), XIX (Medicaid), or XVI (SSI), or with general assistance programs that are subject to the joint processing requirements specified in Sec. 273.2(j)(2).

He has interpreted the restriction upon disclosure of information obtained from a food stamp applicant household to persons directly connected with the administration or enforcement of the provisions of the Food Stamp Act or its regulations to mean that an investigative body such as the grand jury must first obtain a preliminary determination that there is reasonable suspicion of fraud before it can subpoena documents or compel persons to testify before it in discharging its function with respect to determining whether a crime has been committed and who committed it.

In its opposition to the motion, the Government argues that the federal regulations cited do not place the information sought beyond the reach of the grand jury's process, that the Food Stamp Act itself establishes severe criminal penalties for the acquisition and use of coupons in violation of the law and that this is a valid investigation within the province of the grand jury which must be deemed to be directly connected with the enforcement of the Food Stamp Act. Both parties have discussed the case of *Roberts v. Austin*, 632 F.2d 1202 (5th Cir. 1980) in which the court interpreted the Food Stamp Act and the pertinent regulations to determine Congressional intent concerning the investigation of fraud and the confidentiality of recipients' files. Movant relies almost exclusively on this case. In his reading of the case he envisages a "standard" which must be applied to a state prosecutor as well as to the grand jury in its investigative function.

To obtain a proper perspective of the matter and hold it to its true dimension, it is necessary to understand what *Roberts v. Austin, supra,* stands for. That case involved an investigation by the State Attorney of the Fourth Judicial Circuit, a constitutional office created by Article 5 Sec. 17 of the Constitution of the State of Florida, who was responsible for the prosecution of public assistance fraud. The State Attorney requested from the state agency which administered the Food Stamp Program locally the case files of all beneficiaries who were receiving a monthly food stamp allotment of $125 monthly or more. This blanket request was made without any lawful process, subpoena or warrant and the local agency turned over all requested files. Subsequently, the state agency requested

that it be served with a subpoena for their files and a subpoena was served mandating the production of "any and all applications, records, worksheets or any other pertinent information pertaining to any Nassau county food stamp recipient." As a result hundreds of households in that county were subjected to criminal investigations. It was the local agency's position that it would release any and all case files requested by a subpoena served by the State Attorney without consideration whether there was any basis to suspect fraud. The Court held that the local agency administering the Food Stamp Program could not release case files of recipients to a state prosecutor in the absence of a basis to suspect fraud. Upon evaluating the effect of its interpretation of the Food Stamp Act and the regulations upon the investigation of crime, the court clearly stated that its interpretation "in no way impedes the state attorney, a constitutionally authorized body, from investigating fraud." Its position was clear that its interpretation "merely prohibits the state attorney from conducting a fishing expedition in food stamp files" and that "[w]henever the state attorney has reasonable suspicion to suspect fraud in a particular case file, he may request that file and conduct a normal fraud investigation." Reference was also made to normal fraud investigations conducted by the state attorney upon referral by the local agency pursuant to 7 CFR Part 273.16(e)(2).

Movant's reading of the Roberts case injects restrictions and limitations on the legitimate investigative powers of a state prosecutor and a federal grand jury which are simply not there. Fraud investigation as contemplated by the statutory and administrative scheme encompassed by the Food Stamp Program can be performed at various levels: by administrative hearings, prosecution by state authorities or by the United States as prosecutor. Administrative fraud hearings do not preclude prosecution in the criminal sphere. Although movant never defines what standard a federal grand jury must meet, a reading of his supplemental memorandum filed on October 1, 1981 seems to equate such standard

to what he calls the prerequisites which the state prosecutor must meet. An unfortunate combination of the Roberts case and the regulation which encourages state agencies "to refer for prosecution under State or local fraud statutes those individuals suspected of committing fraud, particularly if large amounts of food stamps are suspected of being fraudulently obtained or the individual is suspected of committing more than one fraudulent act." 7 CFR Part 273.-16(e)(2). He points to this regulation as the only one which authorizes referral to state prosecuting authorities and emphasizes that referral is limited to those cases where individuals are suspected of committing fraud. The truth is that Part 273.16(e)(2) is merely a directive to the state agencies that they are to refer for prosecution those individuals suspected of committing fraud. In other words, the state agency is encouraged not to stop at the administrative fraud hearing but to refer for criminal prosecution individuals suspected of fraud. It is to state the obvious that referral for prosecution is limited to those suspected of fraud only. This does not mean that in situations in which there is no agency referral a preliminary showing must first be made that a certain individual is suspected of fraud before prosecution can be commenced against him or before an independent investigative body such as the grand jury may act. The court in Roberts made this clear by stating that it was not impeding a valid investigation by the pertinent law enforcement authority but was merely prohibiting the state attorney from conducting a fishing expedition in food stamp files and that whenever he suspected fraud in a particular case file he was entitled to request and obtain such file to conduct a normal fraud investigation just as he could conduct such an investigation of individuals referred to him by the local agency when it suspected the commission of fraud. Granted that prosecuting authorities, be they state or federal, must be motivated by a suspicion of fraud to request production of the files. Otherwise we would have the situation of the fishing expedition censored in Roberts. But to hold

that a prosecutor cannot conduct a fishing expedition in files of food stamp recipients is not the same as stating that there is an unwritten standard requiring a preliminary showing, in our case to be determined by the courts, before the prosecutor can even investigate.

The Fifth Amendment requires that any federal prosecution be initiated by an indictment returned by a grand jury. In *United States v. Dionisio*, 410 U.S. 1, 16, 93 S.Ct. 764, 772, 35 L.Ed.2d 67 (1972) the Court stated that "[t]his constitutional guarantee presupposes an investigative body 'acting independently of either prosecuting attorney or judge' . . . whose mission is to clear the innocent, no less than to bring to trial those who may be guilty." (Citation omitted.) Viewing the grand jury's role in law enforcement, the Court in *United States v. Calandra*, 414 U.S. 338 at 343–344, 94 S.Ct. 613 at 617–18, 38 L.Ed.2d 561 (1973) noted that "[a] grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated" . . . and that its "investigative power must be broad if its public responsibility is adequately to be discharged."

Movant has not attacked the validity or the good faith of the grand jury's investigation of the particular food stamp beneficiary here involved. He points to no overriding interest which justifies hampering the grand jury's investigation of the applicant's criminal liability.

In disposing of newsmen's claims that preliminary to requiring a grand jury appearance the state must show that a crime has been committed and that they possess relevant information not available from other sources, the Court, in *Branzburg v. Hayes*, 408 U.S. 665, 701–702, 92 S.Ct. 2646, 2666–67, 33 L.Ed.2d 626 (1972) affirmed "that only the grand jury itself can make this determination." The Court further noted that:

> The role of the grand jury as an important instrument of effective law enforcement necessarily includes an investigatory function with respect to determining whether a crime has been committed and who committed it. To this end it must call witnesses, in the manner best suited to perform its task. 'When the grand jury is performing its investigatory function into a general problem area . . . society's interest is best served by a thorough and extensive investigation.' * A grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.' *United States v. Stone*, 429 F.2d 138, 140 (CA 2 1970). Such an investigation may be triggered by tips, rumors, evidence proffered by the prosecutor, or the personal knowledge of the grand jurors. *Costello v. United States*, 350 U.S. [359], at 362 [76 S.Ct. 406, at 408, 100 L.Ed. 1440]. It is only after the grand jury has examined the evidence that a determination of whether the proceeding will result in an indictment can be made.

Id., at 701–702, 92 S.Ct., at 2666–67.

The Court there reaffirmed the importance of the grand jury in "fair and effective law enforcement aimed at providing security for the person and property of the individual" and refused to interpret the First Amendment to grant newsmen the privilege not to testify before a grand jury. It outlined the practical and conceptual difficulties that the judiciary would encounter in each instance in which a reporter was subpoenaed to testify and stated that "the court would also be embroiled in preliminary factual and legal determinations with respect to whether the proper predicate had been laid for the reporters' appearance . . . ." 408 U.S., at 705, 92 S.Ct., at 2668.

In *United States v. Dionisio, supra*, 410 U.S. at 17, 93 S.Ct. at 773, the Court reiterated this view stating that "any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws."

---

* *Wood v. Georgia*, 370 U.S. 375, 392, 82 S.Ct. 1364, 1374, 8 L.Ed.2d 569 (1962).

This view was clearly expressed in *United States v. Morton Salt Co.*, 338 U.S. 632, 642–643, 70 S.Ct. 357, 363–64, 94 L.Ed. 401 where the court comparing the investigative power of the Federal Trade Commission to those of the grand jury said:

> It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.

In *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) the court again rejected the idea that a standard of probable cause had to be met, in that case by the Commissioner of Internal Revenue, to obtain enforcement of a summons in an investigation of tax fraud.

In sum, the restriction on the state agency set forth by regulation limiting those persons to whom it may disclose information given by an applicant household cannot be interpreted as a prohibition on disclosure to an investigative body such as a federal grand jury without unduly hampering its role as an instrument of law enforcement and without the enforcement of the criminal provisions of the Food Stamp Act itself. Certainly it does not mean that the government must make a preliminary showing before a court that a suspicion of fraud exists before the grand jury can even investigate whether the offense was committed or not. Neither the statute nor the regulations shelter a beneficiary who is being investigated for possible abuse of the Food Stamp Program in the manner urged by petitioner.

The motion to quash the subpoena is DENIED.

SO ORDERED.