30 F.3d 135
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Karen SCARBOROUGH, Defendant-Appellant.
 No. 93-2527.
 United States Court of Appeals, Sixth Circuit.
 July 28, 1994.
 
 Before: MARTIN, SUHRHEINRICH, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Karen Scarborough appeals her conviction on one count of conspiracy to obstruct justice and several counts of making false statements before the grand jury. Defendant challenges her jury conviction on four grounds: (1) that the district court erred in concluding that defendant's false statements to the grand jury were material; (2) that the district court abused its discretion in refusing to allow defendant to cross examine a witness about his polygraph; (3) that the district court abused its discretion in allowing the jury to review transcripts of tapes during deliberation; and (4) that the government failed to introduce sufficient evidence to support defendant's conviction.
 
 
 2
 These arguments lack merit, and we AFFIRM defendant's conviction.
 
 I.
 
 3
 This case arises out of a grand jury investigation into a "firebombing" at the Royal Oak Post Office on April 16, 1990, which occurred when an incendiary device, placed among a number of tax returns, erupted into flames. The fire injured Thomas Berlucci, a postal employee, who had collected the smoking package from the mail receptacle.
 
 
 4
 The ensuing investigation focused on the Libertarian Party, members of which were protesting at the post office when the incident occurred. Eventually the investigation focused on two members, Pete Hendrickson and his girlfriend at the time, Doreen Wright.
 
 
 5
 During the grand jury investigation, witnesses testified that prior to April 16, 1990, several members of the party met to discuss the possibility of placing an incendiary device in the mail on income tax day to protest the tax system. Witnesses testified that defendant had attended that meeting.
 
 
 6
 The grand jury subpoenaed defendant, who received immunity prior to testifying.[1] Defendant testified that she had attended the meeting described by other witnesses but had no recollection of a discussion about putting a bomb in the mail; that she had no prior knowledge or involvement in the scheme; and that she was with Pete Hendrickson at the post office on April 16, and that he could not have planted the device.
 
 
 7
 After Hendrickson and Wright were charged with conspiracy, Hendrickson entered into a plea agreement and agreed to cooperate with the government. Hendrickson and Wright then surreptitiously taped conversations between Karen Scarborough and her husband. The tapes corroborated Hendrickson's version of the incident: that defendant, her husband and Hendrickson assembled the device; that the three went to the post office on April 16, and that Scott Scarborough planted the device at the post office. Defendant and her husband were indicted and charged with conspiracy to obstruct justice by presenting false testimony before the grand jury and also with several counts of perjury.
 
 II. Materiality
 
 8
 Defendant contends that the evidence did not establish that her testimony to the grand jury was material to any matter that the grand jury was investigating at the time she gave the testimony. The issue of materiality is a legal question "not a question of fact." United States v. Giacalone, 587 F.2d 5, 6 (6th Cir.1978), cert denied, 442 U.S. 940 (1979). False testimony is material "if it has the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation. Merely potential interference with a line of inquiry is sufficient to establish materiality, regardless of whether the perjured testimony actually serves to impede the investigation." United States v. Richardson, 596 F.2d 157, 165 (6th Cir.1979) (quoting United States v. Howard, 560 F.2d 281, 284 (7th Cir.1977)).
 
 
 9
 Defendant argues that the district court incorrectly concluded that false statements made by defendant to the grand jury were material because: (1) no grand jury members were called to testify as to whether defendant's testimony impeded their investigation of Hendrickson; and (2) the grand jury had sufficient evidence from other witnesses to proceed against Hendrickson.
 
 
 10
 These arguments are unpersuasive. First, the test is not concerned with actual interference, only with whether the false testimony could have interfered. Consequently, no member of the grand jury needed to testify that defendant's testimony interfered with their investigation. United States v. Swift, 809 F.2d 320, 324 (6th Cir.1987). Secondly, although the investigation had already targeted Hendrickson and Wright at the time defendant testified, defendant denied all knowledge of the crime and provided a false alibi for Hendrickson. Her statements were intended to persuade the grand jury that Hendrickson was not involved. Truthful answers by defendant probably would have aided the grand jury in its investigation and broadened the scope of the investigation. Accordingly, we hold that the defendant made false statement concerning matters "material" to the investigation.
 
 III. Polygraph
 
 11
 Defendant contends that the district court abused its discretion in precluding reference to the fact that Pete Hendrickson had taken a polygraph examination or to the results of that examination on the ground that these matters lacked probative value on the issue of Hendrickson's credibility. The Sixth Circuit has never imposed a per se prohibition on the admission of polygraph evidence. United States v. Betancourt, 838 F.2d 168 (6th Cir.), cert. denied, 486 U.S. 1013 (1988). Admissibility is decided after a two-step analysis. "First, the trial court must determine if the proffered evidence is relevant. Second, if the court concludes that the proffered evidence is relevant, it must balance the probative value of the evidence against the hazard of unfair prejudice and/or confusion which could mislead the jury." Wolfel v. Holbrook, 823 F.2d 970, 972 (6th Cir.1987), cert. denied, 484 U.S. 1069 (1988).
 
 
 12
 Here, defendant wanted the polygraph results admitted to attack Hendrickson's credibility. Credibility, however, is a matter for the jury to decide based on the testimony and demeanor of the witness as he testifies. Admitting the results of a polygraph could unduly influence this credibility determination. Consequently, admission of polygraph results is the exception, not the rule. United States v. Blakeney, 942 F.2d 1001, 1014 (6th Cir.1991), cert. denied, 112 S.Ct. 881 (1992). The district court decided that the facts in this case did not present circumstances so unusual as to warrant an exception to the general rule. There is no basis to find that the district court abused its discretion in prohibiting the admission of the results.
 
 IV. Transcripts
 
 13
 Defendant contends that the trial court erred in allowing the jury to have the transcript of taped conversations during deliberations. We review for abuse of discretion. United States v. Larson, 722 F.2d 139 (5th Cir.1983) (holding no prejudicial error in allowing jury to have transcript not formally admitted as evidence during deliberation where jury read transcript during trial and was instructed to resolve inconsistencies in favor of the tape), cert. denied, 466 U.S. 907 (1984). See also United States v. Puerta Restrepo, 814 F.2d 1236, 1242 (7th Cir.1987) (allowing jury to have transcripts even though identity of one of the speakers named on the transcript was disputed where court instructed jury that tapes, not transcripts, were evidence); United States v. Williford, 764 F.2d 1493, 1503 (11th Cir.1985) (absent showing that transcripts were inaccurate or that specific prejudice occurred, no error in allowing transcripts to go to jury during deliberations).
 
 
 14
 Defendant claims that the transcript omitted exculpatory passages contained on the original tape and concludes that she was prejudiced because the jury reviewed an incomplete transcript. If defendant establishes prejudice, she must than show there is "a reasonable possibility that the jury's verdict was influenced by the material that improperly came before it." United States v. Barnes, 747 F.2d 246, 250 (4th Cir.1984).
 
 
 15
 Defendant shows no inaccuracy in the transcripts. The court properly instructed the jury that the tapes were the evidence and that the transcripts were merely guides. We presume that the jurors followed the court's instruction. United States v. Busacca, 863 F.2d 433, 438 (6th Cir.1988), cert. denied, 490 U.S. 1005 (1989). Further, defendant was free to prepare and publish transcripts of "exculpatory" portions of the tape. In fact, defendant played one portion of the tapes for the jury as part of her defense. Under these circumstances, we find that no error occurred.
 
 V. Sufficiency of Evidence
 
 16
 Defendant also argues that the evidence was insufficient to sustain her conviction on Count 1, conspiracy to obstruct justice in violation of 18 U.S.C. Sec. 1503.
 
 
 17
 "[T]he standard of review for claims of insufficient evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)).
 
 The essential elements of conspiracy are:
 
 18
 (1) that the conspiracy described in the indictment was willfully formed, and was existing at or about the time alleged; (2) that the accused willfully became a member of the conspiracy; (3) that one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment, at or about the time and place alleged; and (4) that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged.
 
 
 19
 United States v. Poulos, 895 F.2d 1113, 1116 (6th Cir.1990) (quoting United States v. Meyers, 646 F.2d 1142, 1143-44 (6th Cir.1981)). No direct evidence is needed to prove the existence of a conspiracy; the plan may be inferred from circumstantial evidence. Poulos, 895 F.2d at 1117. Further, the circumstantial evidence need not remove every reasonable possibility except that of guilt. United States v. Townsend, 796 F.2d 158, 161 (6th Cir.1986) (citing United States v. Stone, 748 F.2d 361, 362 (6th Cir.1984)). Once the existence of the conspiracy is shown, "only slight evidence is necessary to implicate a defendant." United States v. Lee, 991 F.2d 343, 347 (6th Cir.1993) (citing Poulos, 895 F.2d at 1117). A formal agreement is not necessary, a mutual understanding among the parties is sufficient to show a conspiracy. United States v. Sanchez, 928 F.2d 1450, 1457 (6th Cir.1991).
 
 
 20
 The evidence upon which the government relies to support the conviction is that defendant met with others to discuss the investigation and that both defendant and her husband testified consistently, but falsely. Both testified to the grand jury that they attended the meeting described by other witnesses but had no recollection of a discussion about putting a bomb in the mail on tax day; that they had no knowledge of, nor did they participate in, placing the firebomb in the mail receptacle; and that Hendrickson could not have been involved because he was with them at the time the device ignited. This testimony conflicts with that of Hendrickson, who stated that defendant and her husband participated in the assembly of the device and that defendant's husband left the car to plant the device at the post office.
 
 
 21
 We find that the jury could infer from the foregoing evidence that defendant and her husband agreed with each other to testify falsely before the grand jury and to provide an alibi for Hendrickson to obstruct the ongoing investigation. The jury assessed the credibility of the witnesses, and its belief in Hendrickson's version of the events cannot be used as a basis to challenge the sufficiency of the evidence. United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984), cert. denied, 469 U.S. 1193 (1985).
 
 
 22
 The evidence, therefore, when viewed in the light most favorable to the government, creates a sufficient basis from which the jury could find that defendant conspired to provide false testimony to the grand jury.
 
 VI.
 
 23
 Accordingly, none of defendant's challenges to the conviction is sustained by the facts or the law and we AFFIRM the conviction.
 
 
 
 [1]
 The order compelling defendant to testify provided that "no information given by defendant could be used against her in a criminal proceeding, except in a prosecution for perjury or giving a false statement."