The STATE of Ohio, Appellee,

v.

LANNING, Appellant.

[Cite as *State v. Lanning,* 161 Ohio App.3d 853, 2005-Ohio-3484.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 04CA29.

Decided June 29, 2005.

854

C. David Warren, Athens County Prosecuting Attorney, and Patrick J. Lang, Assistant Prosecuting Attorney, for appellee.

David H. Bodiker, State Public Defender, and Luis Delos Santos, Assistant Public Defender, for appellant.

KLINE, Judge.

{¶ 1} Appellant, Cynthia Lanning, appeals her conviction in the Athens County Court of Common Pleas for perjury. Lanning contends that there is insufficient evidence to support her conviction. Because we find the record contains evidence that, if believed, would convince the average mind of Lanning's guilt beyond a reasonable doubt, we disagree. Lanning also contends that her conviction is against the manifest weight of the evidence. Because Lanning elected not to testify or present any other witnesses on her behalf, the jury had no evidence to weigh against the state's evidence. Therefore, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered. Accordingly, we affirm the trial court's judgment.

## I

{¶ 2} The grand jury subpoenaed Lanning and granted her transactional immunity relating to her testimony regarding the murder of Terrace Ross and the shooting of Nyra Mays.[1] Brad McLain[2] was a suspect in the murder and shooting because Ross's cell phone, discovered in the car where he was murdered, revealed that the last outgoing phone call Ross made was to McLain's cell phone. The grand jury sought Lanning's testimony because of her relationship with McLain.

{¶ 3} Lanning testified that McLain was her boyfriend and that she began living with him two months before her testimony. The perjury charge relates to Lanning's grand-jury testimony regarding a telephone conversation she had with McLain while he was in jail on an unrelated criminal charge. The relevant portion of Lanning's grand-jury testimony is as follows:

Q. Has [McLain] asked you to collect any money from anybody since he was arrested?

A. No.

Q. Have you talked to [McLain] on the telephone since he's been arrested?

A. I did once just probably after a week he was in jail.

Q. Did you talk to him about a Dave during that phone conversation?

A. I don't remember.

Q. Did [McLain] tell you to tell Wayne to "go smack Dave around or whatever he wants to do to get that other money."

A. No, sir I don't.

Q. He didn't tell you that?

A. No, I don't remember that, no.

Q. What about collecting money from a "Georgie?"

A. Georgie is [McLain's] dad.

Q. Did he tell you to collect any money from Georgie?

A. I don't recall that.

---

1. As Lanning notes in her brief, the trial transcript contains inconsistent spellings of the shooting victim's name, including both "Mays" and "Maze." We shall use "Mays" throughout this decision.

2. The transcript of the telephone call in question and Lanning's grand-jury testimony spell Brad's last name "McLain," while the transcript from Lanning's trial spells it "McClain." We shall use "McLain" throughout this decision.

Q. But you are saying that he didn't tell you to collect money from Dave?

A. No.

Q. He didn't tell you to have Wayne collect money from Dave?

A. No.

Q. What about Randy?

A. No.

Q. Did Randy owe $250.00?

A. I don't know.

Q. Do you know of a Randy that you and [McLain] would both know?

A. Uh, I met Randy one time. He was [McLain's] friend.

Q. And you say Georgie would be [McLain's] dad.

A. Yes.

Q. Who would Dave be?

A. I don't know.

Q. What about Steve?

A. I don't know that either.

Q. In that telephone conversation a week after he was in jail he did not tell you to collect money from either Randy or Dave?

A. No.

{¶ 4} Lt. John Withers of the Athens Police Department played for the grand jury the audiotape recording of the March 16, 2003 telephone conversation between Lanning and McLain. During that telephone conversation, the following exchange occurred:

[McLain]: Tell Wayne to go smack Dave around or whatever he wants to to get that other money.

[Lanning]: Tell him what?

[McLain]: He can go smack Dave around, Steve—Dave—Steve . . .

[Lanning]: Yeah, yeah, we've been doing that.

[McLain]: Smack him around or whatever he wants to get that other money.

[Lanning]: Who was it, just Dave and was it Georgie, too?

[McLain]: No, Georgie don't owe us nothing does he?

[Lanning]: I don't know.

[McLain]: Hell, I don't know. If I think of it I'll call and let you know. Its just Davie now.

[Lanning]: Just Dave?

[McLain]: Oh, no Randy.

[Lanning]: Randy?

[McLain]: Yeah, two fifty.

[Lanning]: Okay. Randy owes two fifty. Okay.

[McLain]: Yeah.

[Lanning]: Ain't been able to get a hold of him.

{¶ 5} Based upon the obvious discrepancies between Lanning's grand-jury testimony and the audiotape of her telephone conversation with McLain, the grand jury indicted Lanning on one count of perjury in violation of R.C. 2921.11, a felony of the third degree. Lanning entered a plea of not guilty and the matter proceeded to a jury trial.

{¶ 6} At trial, the state introduced audio recordings of Lanning's grand-jury testimony and her telephone conversation with McLain. The parties also jointly submitted transcripts of those audio recordings. Additionally, the state offered the testimony of Lt. Withers, who testified regarding the police investigation of the murder of Terrace Ross and the shooting of Nyra Mays. In his testimony, Lt. Withers indicated that McLain was a suspect in the murder and shooting because the last call placed from Ross's cell phone before his murder was to McLain's cell phone. Lt. Withers stated that the police were interested in McLain's phone calls from the jail because they wanted to see if he was talking to anybody—friends, family, or acquaintances—about the murder and shooting.

{¶ 7} Lt. Withers testified that after hearing the telephone conversation between McLain and Lanning, the police were interested in the people who owed McLain money because their investigation revealed that McLain was involved in drug trafficking. Information regarding debts owed to McLain could lead the police to other people who might be able to shed more light on the events leading up to the murder and shooting. Lt. Withers stated that the police did identify one of the persons named in Lanning's telephone conversation with McLain and that talking with that individual assisted the police in their investigation.

{¶ 8} At the conclusion of the evidence, Lanning moved the court for an acquittal pursuant to Crim.R. 29. The trial court overruled her motion and submitted the case to the jury. After two and a half hours of deliberating, the jury informed the trial court that it was deadlocked. The trial court gave the jury additional instruction and the jury resumed deliberation. One hour later, the jury returned a guilty verdict. The trial court later sentenced Lanning to 12 months in the state penal system.

{¶ 9} Lanning appeals, raising the following assignment of error: "The trial court violated Ms. Lanning's right to due process when it convicted her of the charge without sufficient evidence to establish each and every element of the

crimes beyond a reasonable doubt and when the conviction was against the manifest weight of the evidence."

## II

{¶ 10} In her sole assignment of error, Lanning first challenges the sufficiency of the evidence presented by the state at trial. Specifically, Lanning argues that the state failed to introduce sufficient evidence that she knowingly provided false statements under oath and that the state failed to prove that any false statements were material to the grand jury's investigation. Therefore, she contends that the state failed to prove every element of the offense of perjury beyond a reasonable doubt.

{¶ 11} When reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court's role is to examine the evidence admitted at trial to determine whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. The court's evaluation of the sufficiency of the evidence raises a question of law and does not permit the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Circumstantial evidence, direct evidence, or both may support a defendant's conviction. *State v. Swain* (Jan. 23, 2002), Ross App. No. 01CA2591, 2002 WL 146204, citing *State v. Durr* (1991), 58 Ohio St.3d 86, 568 N.E.2d 674. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *Jenks* at paragraph one of the syllabus.

{¶ 12} R.C. 2921.11(A) provides: "No person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a false statement previously made, when either statement is material." Here, Lanning contends that the state failed to introduce sufficient evidence to prove that (1) she knowingly made a false statement to the grand jury and (2) any false statement she may have made was material to the grand jury's investigation.

## A

{¶ 13} R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a

certain result or will probably be of a certain nature." We have previously held that in order for a false statement to be knowingly false, " 'it must appear that the accused knew his statement to be false or was consciously ignorant of its truth.' " *State v. Bayless* (1968), 14 Ohio App.2d 11, 14, 43 O.O.2d 50, 235 N.E.2d 737, quoting 70 Corpus Juris Secundum, 473, Perjury, Section 17b(1). When a defendant's purpose or intent is in dispute, it is necessary to rely upon circumstantial evidence because intent cannot be proved by a third person's direct testimony; rather, it must be gathered from the surrounding facts and circumstances. *State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293. The doing of the act itself is one of the relevant facts and circumstances. *State v. Huff* (2001), 145 Ohio App.3d 555, 563, 763 N.E.2d 695.

{¶ 14} Lanning contends that her false testimony was the result of confusion, mistake, or faulty memory. She claims that she initially testified that she did not remember the individuals the prosecutor mentioned during her grand-jury testimony and that she did not give definitive answers until after the prosecuting attorney's repeated queries.

{¶ 15} The audio recordings and the transcript of Lanning's grand-jury testimony reveal that in response to the prosecuting attorney's first question about the collection of money for McLain, Lanning gave a definitive answer that McLain did not ask her to collect money from *anybody* after his arrest. Then, when the prosecuting attorney's questions turned to the subject of Lanning's telephone conversation with McLain, including specific individuals he asked her to contact, her memory began to fail. However, on at least two separate occasions during her grand-jury testimony, Lanning did testify unequivocally that McLain did not tell her to collect money from either Dave or Randy.

{¶ 16} Additionally, the circumstances surrounding Lanning's grand-jury testimony reveal that less than one month elapsed between Lanning's telephone conversation with McLain and her testimony before the grand jury. The audio recordings and transcript of that telephone conversation also reveal that Lanning was an active participant in the portion of the conversation regarding the collection of debts. Specifically, the recordings and transcript reveal that, when McLain told Lanning to have his brother, Wayne, "go smack Dave around" to get his money, Lanning responded, "Yeah, yeah, we've been doing that." The recording and transcript also reveal that after being told to collect money from Dave, Lanning actively inquired about any money that Georgie might owe McLain. Furthermore, the circumstances reveal that Lanning was McLain's live-in girlfriend. When viewing this evidence in a light most favorable to the state, we find that a rational trier of fact could have found, beyond a reasonable doubt, that Lanning knowingly made a false statement under oath to the grand jury.

B

{¶ 17} Next, Lanning contends that the state failed to introduce sufficient evidence to prove that her false statements were material to the grand jury's investigation. Specifically, Lanning contends that there was insufficient evidence to prove the materiality of the statements because the grand jury was already aware of the recorded telephone conversation at the time of her false statements and because the state failed to call a member of the grand jury to testify regarding the scope of the grand jury's investigation.

{¶ 18} At trial, the court instructed the jury that a false statement is material "if it can affect the course or outcome of the proceeding." The purpose of a grand-jury investigation is to obtain facts that will enable the grand jury to determine whether to bring formal charges against someone, rather than to prove matters directly at issue. *United States v. Stone* (C.A.2, 1970), 429 F.2d 138, 140. Thus, in the context of a grand-jury proceeding, a false statement is material if it " 'has the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation.' Merely potential interference with a line of inquiry is sufficient to establish materiality, regardless of whether the perjured testimony actually serves to impede the investigation." *United States v. Richardson* (C.A.6, 1979), 596 F.2d 157, 165, quoting *United States v. Howard* (C.A.7, 1977), 560 F.2d 281, 284.

{¶ 19} As the *Stone* court noted: "A grand jury's investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed; its investigation proceeds step-by-step and a false statement by a witness, * * * in any step, even though not relevant in an essential sense to the ultimate issues pending before the grand jury, may be material in that it tends to influence or impede the course of the investigation." *Stone* at 140. Thus, each lead to an additional avenue of inquiry may be of material worth to a grand-jury investigation. Id. The materiality of the false statement is tested at the time the allegedly false statement was made. Id. See, also, *United States v. Lee* (C.A.6, 2004), 359 F.3d 412, 416, citing *United States v. McKenna* (C.A.9, 2003), 327 F.3d 830, 838.

{¶ 20} Here, the transcript of Lanning's grand-jury testimony reveals that the grand jury sought her testimony in the course of its investigation of the murder of Terrace Ross and the shooting of Nyra Mays. The course of Lanning's testimony also reveals that the grand jury was specifically interested in information Lanning had about McLain, his activities, and his contacts.

{¶ 21} In addition to the recordings and transcripts of Lanning's grand-jury testimony and the telephone conversation, the state also offered the testimony of

Lt. Withers. He testified that the police suspected McLain's involvement in the murder and shooting because the last call placed from the murder victim's cell phone was to McLain's cell phone. Lt. Withers indicated that the police investigation into the murder and shooting also revealed that McLain was involved in drug trafficking. He also indicated that the police were interested in the people who owed McLain money because they could provide them with additional leads to the events leading up to the murder and shooting. Lt. Withers testified that the police were able to identify one of the persons named in Lanning and McLain's telephone conversation and that talking with that individual assisted the police in their investigation. Lt. Withers also testified that he knew that the grand jury was aware of the taped telephone conversation between Lanning and McLain because he was the person who played the tape for the grand jury.

{¶ 22} Lanning contends that the state was required to introduce the testimony of a member of the grand jury, the prosecuting attorney, or copies of the indictments returned by the grand jury to prove the materiality of her false testimony. We disagree. Although the introduction of such evidence may be one way to establish materiality, see *United States v. Saenz* (C.A.5, 1975), 511 F.2d 766, 768, "such proof is not indispensable." *United States v. Freeman* (C.A.6, 1999), 173 F.3d 857 (Table), 1999 WL 196555, *2, citing *United States v. Nazzaro* (C.A.1, 1989), 889 F.2d 1158, 1166; *United States v. Scarborough* (C.A.6, 1994), 30 F.3d 135 (Table), 1994 WL 396181.

{¶ 23} Here, the state offered the testimony of Lt. Withers, an investigator for the Athens Police Department. Although Lt. Withers was not a member of the grand jury investigating the murder of Terrace Ross and Nyra Mays, he was intimately involved in the parallel police investigation of those very crimes. A rational trier of fact could conclude beyond a reasonable doubt that issues material to the police investigation of this murder and shooting would also be material to a grand-jury investigation of the identical crimes. Therefore, when viewing this evidence in a light most favorable to the state, we find that a rational trier of fact could have found beyond a reasonable doubt that Lanning's false statements were material to the grand jury's investigation of these crimes.

{¶ 24} Because we find, after viewing the evidence in a light most favorable to the state, that a rational trier of fact could have found the essential elements of perjury proven beyond a reasonable doubt, we conclude that sufficient evidence supports Lanning's conviction.

C

{¶ 25} Having determined that sufficient evidence supports Lanning's conviction, we now consider whether her conviction is against the manifest weight of the

evidence. The test for determining whether a conviction is against the manifest weight of the evidence is much broader than that used to examine the sufficiency of the evidence. *Martin,* 20 Ohio App.3d at 175, 20 OBR 215, 485 N.E.2d 717. In determining whether a conviction is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

{¶ 26} An appellate court should vacate a conviction and grant a new trial only when the evidence weighs strongly against the conviction. Id. In making this review, the appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus.

{¶ 27} Here, we already found that the state's evidence is sufficient to support Lanning's conviction. Lanning elected not to testify at trial and did not present any other witnesses in her defense. Therefore, the jury had no evidence to weigh against the state's evidence. The jury found the testimony of Lt. Withers, as well as the audio recordings and transcripts of Lanning and McLain's telephone conversation and Lanning's grand-jury testimony, convincing. We have no reason to disturb the jury's determination.

{¶ 28} In light of the foregoing, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Therefore, we find that Lanning's conviction is not against the manifest weight of the evidence. Accordingly, we overrule Lanning's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

ABELE, P.J., and HARSHA, J., concur.